FILED

2012 Nov-26  AM 09:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **MIRANDA BLACKWOOD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-12-S-1000-NE** |
| | ) | |
| **THE ARC OF MADISON COUNTY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Miranda Blackwood, alleges that defendant, The Arc of Madison County, Inc., discriminated against her on the basis of her disability and medical-leave status in violation of various federal employment discrimination statutes and a state tort law.[1]   Specifically, plaintiff asserts federal claims for discrimination and retaliation under the Americans with Disabilities Act of 1990, 42 U.S.C. § 1201 *et seq.* ("ADA"), and for interference and retaliation under the Family and Medical Leave Act of 1993, 29 U.S.C. 2601 *et seq.* ("FMLA").[2]   In addition, plaintiff asserts a supplemental state-law claim for negligent hiring, training, supervision, and

---

[1] Doc. no. 3 (Amended Complaint).

[2] *Id.* ¶¶ 34-43.  Plaintiff's amended complaint also includes references to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), *see id.* ¶¶ 1-2, and to a hostile work environment. *See id.* ¶¶ 18, 21, 33.  It is not clear whether plaintiff alleges that she was subjected to a hostile work environment in violation of Title VII, the ADA, or the FMLA.

retention.[3]  This case presently is before the court on defendant's motion to dismiss plaintiff's amended complaint.[4]  Upon consideration, this court will grant the motion to dismiss plaintiff's claims for Title VII violations, for hostile work environment, and for negligent hiring, training, supervision, and retention *in their entirety*.  Further, this court will dismiss plaintiff's claims under the ADA, *but only to the extent that they arise from events occurring prior to March 30, 2011*.  Plaintiff shall be allowed to continue to pursue any ADA claims that arose from events occurring after March 30, 2011, as well as her FMLA claims.

## I.  LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  That rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 544 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

---

[3] *Id.* ¶¶ 44-51.

[4] Doc. no. 5 (Motion to Dismiss).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp.*, 550 U.S.] at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Iqbal*, 556 U.S. at 678 (alteration supplied).

## II.  FACTS AS ALLEGED

As always is the case in the context of ruling upon a motion to dismiss, the

district court is required to assume that

> the facts set forth in the plaintiff's complaint are true. *See Anza* [*v. Ideal Steel Supply Corp.*], 547 U.S. 451, [453,] 126 S. Ct. [1991,] 1994 [(2006)] (stating that on a motion to dismiss, the court must "accept as true the factual allegations in the amended complaint"); *Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (*en banc*) (setting forth the facts in the case by "[a]ccepting all well-pleaded factual allegations (with reasonable inferences drawn favorably to Plaintiffs) in the complaint as true"). Because we must accept the allegations of plaintiff's complaint as true, what we set out in this opinion as "the facts" for Rule 12(b)(6) purposes may not be the actual facts.

*Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1281 n.1 (11th Cir. 2006) (alterations supplied).

Plaintiff, Miranda Blackwood, was hired by defendant, The Arc of Madison

County, Inc., on June 1, 2009, for the position of a "house manager," which provided

a rate of pay of $14.65 an hour, and involved a workload of over forty hours a week.[5]

Plaintiff was directly supervised by Yolanda Watkins, and additionally supervised by

Susan Klingel, the chief executive officer of defendant.[6]

At all times relevant to her allegations, plaintiff suffered from one or more

serious health conditions, for which she was prescribed medication, and was approved

for intermittent leave under the Family and Medical Leave Act.[7]   Plaintiff's

supervisors, including Ms. Watkins and Ms. Klingel, were aware of her condition(s)

and medications.[8]

At some point, plaintiff became a Group Home Manager for two group homes,

and a Qualified Mental Retardation Professional ("QMRP") assistant to Ms. Watkins.[9]

On October 1, 2010, however, plaintiff received an unsatisfactory evaluation from Ms.

Watkins.[10]   After meeting with plaintiff regarding the evaluation, Ms. Klingel and

Rosalyn Bridges placed her on a ninety-day probation, and denied her an annual

---

[5] Doc. no. 3 (Amended Complaint) ¶ 7.

[6] *Id.* ¶ 8.

[7] *Id.* ¶ 9.  Plaintiff does not state the nature of her condition(s), allegedly because her amended complaint "is a public document and to reveal the specifics of her disabilities and/or perceived disabilities would be a violation of her right to privacy."  Doc. no. 8 (Response in Opposition to Motion to Dismiss), at 1.

[8] Doc. no. 3 (Amended Complaint) ¶ 10.

[9] *See id.* ¶ 13.

[10] *Id.* ¶ 12.  Plaintiff does not allege that the unsatisfactory evaluation was unjustified or otherwise improper.

raise.[11]

Further, Ms. Klingel divested plaintiff of her duties as a manager of two group homes, and the QMRP assistant to Ms. Watkins.[12]  Instead, plaintiff was placed under the supervision of Janice Powers, and assigned to the care of two patients, one of whom was a male sex offender who was not supposed to be alone with a female caregiver under the terms of his Individual Habilitation Plan ("IHP"), and the other of whom was "in an apartment."[13]  After plaintiff learned the first patient's history and made several complaints, he was provided with a male caregiver.[14]  Plaintiff was left with one remaining patient, and assigned to a sixteen-person van to transport him.[15]

Additionally, plaintiff was excluded from meetings, and was not given the reports of those meetings.[16]

Plaintiff was qualified for several positions that became available between October 1, 2010 and April 1, 2011, including those of a QMRP, and of a temporary and a permanent Group Home Manager.[17]  In spite of the fact that plaintiff expressed

---

[11] *Id.*  Plaintiff does not provide any other information regarding the role of Ms. Bridges in the events alleged.

[12] *Id.* ¶ 13.

[13] *Id.*  Plaintiff does not state whether the transfer involved a reduction in pay, hours, or benefits.  Further, it is not clear whether plaintiff also objected to the fact that the second patient was "in an apartment," and, if so, why the apartment was not satisfactory.

[14] Doc. no. 3 (Amended Complaint) ¶ 14.

[15] *Id.*

[16] *Id.* ¶ 15.

[17] *Id.* ¶ 16.

interest in the positions to Ms. Powers and Ms. Klingel, defendant hired persons less qualified than plaintiff, including some individuals from outside the company, to fill the positions.[18]  Plaintiff was instead given additional duties assisting other group home managers, but was not herself assigned to the position of a group home manager, which she felt was a demotion, and found to be demeaning.[19]

During this time, plaintiff alleges that she was harassed and treated disparately by Ms. Klingel and other members of management, and "subjected to a hostile work environment and discriminated against because of her disability, a record of a disability, and/or because she was perceived to have a disability."[20]  In addition to the conduct alleged above, plaintiff was subjected to "other harassing acts," including the suggestions that she had requested copies of the files of her former patients to copy in violation of the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d-2 ("HIPAA"), and that she had made a sexual harassment complaint.[21]

Plaintiff complained to Ms. Klingel about the alleged "discriminatory and/or retaliatory treatment."[22]  Thereafter, plaintiff alleges that, "[t]hrough its harassment

---

[18] *Id.*

[19] *Id.* ¶ 17.

[20] Doc. no. 3 (Amended Complaint) ¶ 18.

[21] *Id.* ¶ 19.  Plaintiff does not state whether she indeed requested copies of her former patients' files to copy in violation of HIPAA, and whether she filed a sexual harassment complaint. Further, plaintiff does not specify how the suggestion that she filed a sexual harassment complaint was alleged to *itself* constitute harassment.

[22] *Id.* ¶ 20.

and hostile work environment, defendant engaged in a concerted effort to cause [her] constructive discharge and/or to find a pretextual reason to terminate her in retaliation for making a complaint of disparate treatment, hostile work environment and/or because of her disability and/or perceived disability."[23]

A coworker sent plaintiff a threatening text message on April 1, 2011.[24]  At approximately 7:15 a.m., plaintiff contacted her supervisor, Janice Powers, who asked her to make a written statement about the incident.[25]  Ms. Powers also asked plaintiff not to work that morning, or to leave work early, because she had worked so much overtime for the week.[26]  Plaintiff agreed to leave that morning, immediately after teaching an already-scheduled cardiopulmonary resuscitation ("CPR") class.[27]

At approximately 8:25 a.m., Ms. Powers called plaintiff, and said that she (Ms. Powers) needed to meet with plaintiff immediately after the CPR class.[28]  Plaintiff was "very anxious and concerned" about the meeting, so she went to meet with Ms. Powers while the students were still taking the CPR test.[29]  During the meeting, Ms. Powers asked plaintiff whether a specific coworker was sexually harassing her,

---

[23] *Id.* ¶ 21 (alterations supplied).

[24] *Id.* ¶ 22.  It is not clear whether the harassment by Ms. Klingel and other members of management, and the harassment by the coworker were connected.

[25] *Id.*

[26] *Id.*

[27] Doc. no. 3 (Amended Complaint) ¶ 22.

[28] *Id.* ¶ 23.

[29] *Id.*

requested that plaintiff make a written statement about the sexual harassment, and reminded plaintiff to make a written statement about the threatening text message.[30]

During the course of the meeting, plaintiff first began to feel sick and lightheaded as a result of anxiety, and later began to cry, and to suffer from an anxiety attack.[31]  After the meeting, plaintiff returned to the classroom, and started a First Aid videotape for the students to watch.[32]  Plaintiff then excused herself from the room because she "couldn't think straight, and sat down crying."[33]  Linda Gilmer, a coworker, sat beside plaintiff and tried to comfort her.[34]

Ms. Powers asked whether plaintiff needed someone to pick her up and take her home.[35]  Plaintiff responded "that she had given up, and that she quit trying to prove that she was a good staff employee, that she could be trusted to do the work for which she had originally been hired."[36]

---

[30] *Id.*  It is not clear whether the coworker who sexually harassed plaintiff, and the coworker who sent her the threatening text message were, in fact, the same person.

[31] *Id.* ¶¶ 23-24.

[32] *Id.* ¶ 24.

[33] Doc. no. 3 (Amended Complaint) ¶ 24.  Plaintiff does not state where she went after she left the classroom.

[34] *Id*.  Plaintiff does not provide any other information regarding the role of Ms. Gilmer in the events alleged.

[35] *Id*.  Plaintiff does not state how Ms. Powers learned about the situation, or when she arrived on the scene.

[36] *Id.* ¶ 25.  Plaintiff alleges that her statements to Ms. Powers were "a result of her anxiety attack."  *Id.*

Plaintiff then prepared to leave work early.[37]  As plaintiff was leaving, she passed Susan Klingel, defendant's chief executive officer, and told her "that she quit trying to prove to her she was a good worker capable of doing more than she was allowed to do."[38]

Plaintiff  notified defendant "as soon as practicable after she learned of the need" to take FMLA leave.[39]  Later on April 1, 2011, the day she allegedly suffered an anxiety attack, plaintiff saw her physician, and received a letter excusing the four hours of work she had missed.[40]

The following day, plaintiff received a letter from Ms. Klingel, stating that plaintiff had verbally resigned, and that she would receive her last paycheck in the mail.[41]  Later that day, plaintiff sent a message to Ms. Klingel by electronic mail ("e-mail"), explaining that she did not intend her words to be interpreted as a resignation, that she was ill and needed to take FMLA leave, and that Ms. Klingel "must have misunderstood her."[42]

Plaintiff attempted to deliver the letter from her physician, excusing plaintiff's

---

[37] *Id.* ¶ 26.  Plaintiff alleges that she left work early "not only with the permission of Janice Powers, her supervisor, but at her direction because of overtime issues."  *Id.*

[38] *Id.*

[39] Doc. no. 3 (Amended Complaint) ¶ 27.  Plaintiff does not specify the date on which she notified defendant of her need for FMLA leave.

[40] *Id.* ¶ 28.

[41] *Id.* ¶ 29.

[42] *Id.* ¶ 30.

absence from work under the FMLA, to defendant.[43]  However, Ms. Klingel refused to accept the letter, and refused to allow plaintiff to return to work.[44]  Nearly six months later, on September 26, 2011, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that defendant engaged in retaliation and disability discrimination.[45]

## III.  DISCUSSION

### A.    Plaintiff's Claim Under Title VII

Defendant argues that, "although [plaintiff] cursorily references a claim under Title VII in the jurisdictional section of the complaint (Doc. 3, at ¶ 1), she has put forth absolutely no facts that would support any such claim."[46]  Plaintiff's amended complaint mentions Title VII three times, but does not incorporate Title VII into any of her claims for relief, and does not include any specific factual allegations of Title VII violations.[47]  Further, in her response to defendant's motion to dismiss, plaintiff

---

[43] *Id.*  Plaintiff does not specify the date on which she attempted to submit the letter from her physician.

[44] *Id.* ¶¶ 30-31.

[45] Doc. nos. 3 (Amended Complaint) ¶ 2; 3-1 (Charge of Discrimination).  Plaintiff's right to sue letter was issued on December 29, 2011.  Doc. nos. 3 (Amended Complaint) ¶ 2; 3-2 (Dismissal and Notice of Rights).

[46] Doc. no. 6 (Brief in Support of Motion to Dismiss), at 12 (alteration supplied).

[47] Plaintiff's first amended complaint states that "[t]his suit is brought and jurisdiction lies pursuant to the Americans With Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.*, which incorporates by reference Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5"; that "[t]his action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.*, for retaliation after complaining of sexual harassment"; and that "[a]ll conditions precedent to jurisdiction under Title VII, 42 U.S.C. § 2000e, have occurred or been complied with in that Plaintiff timely filed her charge of discrimination on September 26, 2011 with

does not address the argument that she has failed to plead a Title VII claim.  Instead, plaintiff states that "[p]laintiff's counts contain its requests for legal relief.  As Counts I through V contain no allegations of racial or sexual harassment, plaintiff is not seeking such based on her factual allegations."[48]

Thus, assuming that plaintiff ever asserted a Title VII claim, it appears to have been abandoned.[49]

## B.    Plaintiff's Claims Under the ADA Arising Prior to March 30, 2011

Defendant next contends that any ADA claims for discrimination and retaliation arising prior to March 30, 2011 are untimely.[50]  The filing of an EEOC charge within 180 days of the discriminatory act is a condition precedent to bringing suit under the ADA.  *See* 42 U.S.C. § 2000e-5(e)(1) (requiring claimant to submit a charge of discrimination to the EEOC within 180 days "after the alleged unlawful employment practice occurred"); *Maynard v. Pneumatic Products Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001) (*per curiam*) ("An ADA plaintiff has the burden of proving all conditions precedent to filing suit, including the condition that he timely filed with the

---

the Equal Employment Opportunity Commission (EEOC) within 180 days after the last discriminatory treatment.  (Exhibit A)."  Doc. no. 3 (Amended Complaint) ¶¶ 1-2.

[48] Doc. no. 8 (Response to Motion to Dismiss), at 21 (alteration supplied).

[49] Thus, this court need not address defendant's argument that plaintiff's claims under Title VII for acts occurring prior to March 30, 2011 are untimely.  *See* doc. no. 6 (Reply in Support of Motion to Dismiss), at 2-3.  Likewise, this court need not address the argument that, assuming plaintiff alleged that she was subjected to hostile work environment in violation of Title VII, those allegations were implausible.  *See id.* at 3-7.

[50] Doc. no. 6 (Brief in Support of Motion to Dismiss), at 13.

EEOC.") (citation omitted).   Plaintiff filed an EEOC charge of retaliation and disability discrimination on September 26, 2011.[51]  Counting backward 180 days, one arrives at March 30, 2011, just two days before plaintiff received the letter terminating her employment with defendant on April 2, 2011.[52]

In her response in opposition to defendant's motion to dismiss, plaintiff notes that defendant "cites *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) for the proposition that anything occurring more than 180 days before the charge was filed is untimely," but argues that such occurrences "may constitute relevant *background* evidence in a proceeding in which the status of a current employment practice is at issue."[53]  Further, plaintiff concedes that "[f]actual allegation nos. 1 through 15 are *background* for the situation leading to the actionable claims made in this case."[54]  Because plaintiff does not address defendant's argument that events occurring prior to March 30, 2011 do not *themselves* give rise to timely ADA claims, and because the plain language of the ADA bars such claims, this court will grant

---

[51] Doc. no. 3 (Amended Complaint) ¶ 2; doc. no. 3-1 (Charge of Discrimination).

[52] *See* doc. no. 3 (Amended Complaint) ¶ 29 (emphasis supplied).

[53] Doc. no. 8 (Response to Motion to Dismiss), at 2 (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)) (emphasis supplied).

[54] *Id.* at 14.  Paragraphs 1-15 contain plaintiff's allegations regarding, *e.g.*, her unsatisfactory evaluation, her job transfer, her assignment to the care of a male sex offender, her issuance of a sixteen-person van to transport her one remaining patient, and her exclusion from meetings and lack of access to the reports of those meetings.

defendant's motion to dismiss those claims as untimely.[55]

## C.  Plaintiff's Claim for Hostile Work Environment

Defendant argues that plaintiff's claim for a hostile work environment is implausible.[56]  To assert a claim for hostile work environment, a plaintiff must allege that:

> (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability.

*Edwards v. Prime Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010) (citing *Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009); *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); *Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 & n.2 (11th Cir. 2002)).  Plaintiff's amended complaint mentions a hostile work environment three times, but does not incorporate a formal hostile work environment claim into any of her statements for relief.[57]  Indeed, it is not even clear whether

---

[55] Thus, this court need not address the argument that, assuming plaintiff alleged that she was subjected to hostile work environment in violation of the ADA prior to March 30, 2011, those allegations were implausible.  *See id.* at 3-7.

[56] Doc. no. 6 (Brief in Support of Motion to Dismiss), at 17-18 n.5.

[57] Plaintiff's first amended complaint states that plaintiff "was subjected to a hostile work environment and discriminated against because of her disability, a record of a disability, and/or because she was perceived to have a disability"; that, "[t]hrough its harassment and hostile work environment, defendant engaged in a concerted effort to cause [plaintiff's] constructive discharge and/or to find a pretextual reason to terminate her in retaliation for making a complaint of disparate treatment, hostile work environment and/or because of her disability and/or perceived disability"; and that defendant "pretextually terminated and/or constructively discharged [plaintiff] in retaliation

plaintiff alleges a hostile work environment in violation of Title VII, the ADA, or the FMLA. Upon review, plaintiff's allegations plainly fail to meet the *Edwards* standard.

In response to defendant's motion to dismiss, plaintiff identifies three paragraphs that support her allegations of hostile work environment. Specifically, plaintiff argues that:

> 9.     [*Plaintiff*] *was excluded from meetings and reports of the meetings were not given to her.* This fact supports the hostile work environment under the ADA, the disparate treatment, adverse job actions, and [defendant's] continuing effort to force plaintiff to quit.[58]

> 13.     *This treatment included giving* [*plaintiff*] *an unsatisfactory evaluation, refusing to give her a raise, taking away the job duties of house manager and instead having her perform the job duties of an assistant house manager, giving her inferior equipment (such as a 16-person van when she was caring for a single patient), assigning her to care for a patient who was a known threat to female caregivers, suggesting she had requested copies of former patients' files to copy in violation of HIPAA, suggesting she had made a complaint of sexual harassment, and other harassing acts.* This fact establishes the claim of a hostile work environment, and that an improper motivation was the source of any adverse actions against [plaintiff].[59]

> 14.     [*Plaintiff*] *complained to Klingel about this discriminatory and/or retaliatory treatment.* This fact supports that [defendant] was on notice that [plaintiff] believed she was being discriminated against and working in a hostile environment, yet failed to do anything in response to her

---

for complaining of harassment, hostile work environment, and/or disparate treatment in violation of the ADA, and/or because of her disability, perceived disability and/or as a direct result of exercising her rights provided under the FMLA." Doc. no. 3 (Amended Complaint) ¶¶ 18, 21, 33 (alterations supplied).

[58] Doc. no. 8 (Response to Motion to Dismiss), at 17 (quoting doc. no. 3 (Amended Complaint) ¶ 15) (alteration supplied).

[59] Doc. no. 13 (Response to Motion to Dismiss), at 18-19 (quoting doc. no. 3 (Amended Complaint) ¶ 19) (alterations supplied).

complaint.[60]

As noted in Part III(C), *supra*, plaintiff's ADA claims for discrimination and retaliation occurring prior to March 30, 2011 are untimely.  Indeed, plaintiff concedes that "[f]actual allegation nos. 1 through 15 are *background* for the situation leading to the actionable claims made in this case."[61]   Because plaintiff describes her allegation that she "was excluded from meetings," and that "reports of the meetings were not given to her" as supporting "the hostile work environment *under the ADA*,"[62] and because that allegation appears in *paragraph 15* of her amended complaint, this court holds that allegation to not be actionable.

Plaintiff does not specify whether she intends the allegations in paragraph 19 of her amended complaint to support a claim of hostile work environment in violation of Title VII, the ADA, or the FMLA.  If those allegations arise under Title VII, they are not adequately pled.[63]   If those allegations arise under the ADA, they are untimely.[64]  Even assuming those allegations arise under the FMLA, however, they

---

[60] Doc. no. 13 (Response to Motion to Dismiss), at 19 (quoting doc. no. 3 (Amended Complaint) ¶ 20) (alteration supplied).

[61] Doc. no. 13 (Response to Motion to Dismiss), at 14.  As noted in footnote 54, *supra*, paragraphs 1-15 contain plaintiff's allegations regarding, *e.g.*, her unsatisfactory evaluation, her job transfer, her assignment to the care of a male sex offender, her issuance of a sixteen-person van to transport her one remaining patient, and her exclusion from meetings and lack of access to the reports of those meetings.

[62] Doc. no. 8 (Response to Motion to Dismiss), at 17 (quoting doc. no. 3 (Amended Complaint) ¶ 15) (emphasis supplied).

[63] *See* part III(A), *supra*.

[64] *See* part III(B), *supra*.

do not satisfy the *Edwards* standard because plaintiff does not offer enough details to

meet that standard.  As defendant correctly argues, plaintiff

> *never* alleges she was entitled to a better review than she received; she
> has not alleged that there was anything discriminatory or hurtful about
> being assigned a 16-passenger van; she does not allege that she *did not*
> violate HIPAA or make complaints justifying further inquiry; and she
> affirmatively alleges that any responsibility to care for the patient she
> disliked as removed as soon as she requested such.[65]

Likewise, plaintiff does not specify whether she intends the allegation in

paragraph 20 of her amended complaint to support a claim of hostile work

environment in violation of Title VII, the ADA, or the FMLA.  Even so, plaintiff

describes the allegation that she "complained to Klingel about this discriminatory

and/or retaliatory treatment" as showing that defendant was "on notice that [plaintiff]

*believed* she was being discriminated against and working in a hostile environment."[66]

Because this court holds the allegations *of which* defendant was supposedly on notice

to not be actionable, the allegation that defendant *was* on notice is likewise not

actionable.  Accordingly, this court will grant defendant's motion to dismiss plaintiff's

claim for hostile work environment.

## D.   Plaintiff's Claim for Negligent Hiring, Training, Supervision, and Retention

Defendant next contends that plaintiff has failed to state a supplemental claim

---

[65] Doc. no. 9 (Reply in Support of Motion to Dismiss), at 5 (emphasis in original).

[66] Doc. no. 13 (Response to Motion to Dismiss), at 19 (quoting doc. no. 3 (Amended Complaint) ¶ 20) (alteration and emphasis supplied).

for negligent hiring, training, supervision, and retention because the amended complaint does not adequately allege an underlying tort, and does not establish the elements of negligence.  An employer cannot be *independently* guilty of negligent training or supervision "in the absence of some tort committed by [an employee] against [the plaintiff]." *Taylor v. Stevenson*, 820 So. 2d 810, 812 (Ala. 2001) (citing *Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820 (Ala. 1999)) (alterations supplied).  Further, the employee's tort must be "recognized under Alabama common law." *Jackson v. Cintas Corp.*, 391 F. Supp. 2d 1075, 1100 (M.D. Ala. 2005) (citing Stevenson, 762 So. 2d at 824)).

Even if a defendant's employee has committed a recognized tort, the plaintiff must show "that [the employer] had notice or knowledge (actual or presumed) of [the employee]'s alleged incompetency.'" *Voyager Insurance Cos. v. Whitson*, 867 So. 2d 1065, 1073 (Ala. 2003) (quoting *Ledbetter v. United American Insurance Co.*, 624 So. 2d 1371, 1373(Ala. 1993); *Perkins v. Dean*, 570 So. 2d 1217, 1219-20 (Ala. 1990)) (alterations in original).  In turn, this requires a showing "that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge." *Voyager*, 867 So. 2d at 1073 (quoting *Lane v. Central Bank of Alabama, N.A.*, 425 So. 2d 1100 (Ala. 1983)).

It is not clear whether plaintiff premises her negligence claim on allegations that

defendant's employees violated Title VII, the ADA, or the FMLA. This court's review of plaintiff's allegations is complicated by the fact that plaintiff's complaint is a textbook example of a "shotgun" pleading, or one in which "each count incorporates every antecedent allegation by reference." *Byrne v. Nezhat*, 261 F.3d 1075, 1129 (11th Cir. 2001). As a result, "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. District Board of Trustees of Central Florida Community College*, 77 F.3d 364, 366 (11th Cir. 1996). Upon review, however, it appears that plaintiff fails to state a negligence claim under any statute.

In her count for negligent hiring, training, supervision, and retention, plaintiff alleges the following:

> 44.    Plaintiff, Miranda Blackwood, re-alleges and incorporates paragraphs 1-43 above as if pleaded separately herein.

> 45.    This is a claim arising under the law of the State of Alabama to redress the Defendant's negligent hiring, training, supervision, and retention of Yolanda Watkins, Janice Powers, Susan Klingel and others.

> 46.    By not conducting a background check or checking references, defendants negligently hired Yolanda Watkins, Janice Powers, Susan Klingel and others, which proximately caused their discrimination against and termination and/or constructive discharge of Plaintiff.

> 47.    By conducting no Equal Employment Opportunity, Discrimination, FMLA, and/or Americans with Disabilities Act (ADA) training, the defendant negligently failed to train Yolanda Watkins, Janice Powers, Susan Klingel and other employees adequately on the subject of harassment, discrimination, disabilities, FMLA and the ADA,

which proximately caused the discrimination against and termination of the plaintiff.

48.     The defendant negligently failed to supervise Yolanda Watkins, Janice Powers, Susan Klingel and others adequately, which proximately caused their discrimination against and termination of the plaintiff.

49.     The defendant negligently failed to terminate Yolanda Watkins, Janice Powers, Susan Klingel and others, after receiving actual and constructive notice of their proclivity for discriminating against employees with actual and/or perceived disabilities, which proximately caused their continued discrimination against and termination of the plaintiff.

50.     The defendant knew or should have known that Yolanda Watkins, Janice Powers, Susan Klingel and others were unfit to act as its agents and employees and defendant directed, aided, participated, authorized or ratified the conduct Watkins, Powers, Klingel and others, or the acts of Watkins, Powers, Klingel and others were calculated to or did benefit defendant.

51.     Yolanda Watkins, Janice Powers, Susan Klingel and others' discrimination against and termination of the plaintiff has caused her great emotional distress and trauma for which she seeks compensatory and punitive damage against the defendant.

In response to defendant's motion to dismiss, plaintiff identifies an additional paragraph that allegedly supports her claim for negligent hiring, training, supervision, and retention.  Specifically, plaintiff argues that:

8.     *Plaintiff was assigned to take care of two patients, one a male sex offender who according to his Individual Habilitation Plan (IHP), was not to be alone with a female caregiver, and a second patient in an apartment.  Only after several complaints after learning the history of the first patient, was he taken out of* [plaintiff's] *care and assigned to a male caregiver.  [Plaintiff] then had only the single patient, but was assigned a 16-person van to transport the patient in.  This fact supports*

either/or/and that plaintiff's supervisors were negligently trained when they assigned Plaintiff to take care of a sex offender, in contradiction to the guidelines established for his care, and/or that she suffered an adverse employment action being placed in a dangerous position by her supervisory staff. This fact also supports that her hours were cut, her responsibilities were diminished, the equipment she was given was inappropriate for the task, and that her supervisory staff was attempting to make her working conditions so intolerable that she would quit.[67]

If plaintiff's negligence claim is premised on Title VII violations, it must fail as a matter of law because Alabama law does not recognize "'an independent cause of action for sexual harassment.'" *Jackson*, 391 F. Supp. 2d at 1100-1101 (quoting *Stevenson*, 762 So. 2d at 825 n.6).  Even if plaintiff's negligence claim is premised on violations of the ADA or the FMLA, defendant correctly argues that plaintiff

fails to address the absence of any duty under Alabama law to provide equal employment training, and does not address at all how she was injured as a result of some alleged flaw in the backgrounds of the relevant employees.  Indeed, she still does not even address what those flaws *were*.  She certainly does not show that any employee was *incompetent* and that the alleged incompetence of that employee was actually known to the employer or was discoverable by the employer if it had exercised due diligence.[68]

Accordingly, this court will grant defendant's motion to dismiss plaintiff's claim for negligent hiring, training, supervision, and retention.

## IV.  CONCLUSION AND ORDER

This court hereby DISMISSES plaintiff's claims for Title VII violations, for

---

[67]   Doc. no. 13 (Response to Motion to Dismiss), at 16-17 (quoting doc. no. 3 (Amended Complaint) ¶ 14) (alterations supplied).

[68]  Doc. no. 9 (Reply in Support of Motion to Dismiss), at 9 (emphasis in original).

hostile work environment, and for negligent hiring, training, supervision, and retention *in their entirety*.  Further, this court DISMISSES plaintiff's claims under the ADA, *but only to the extent that they arise from events occurring prior to March 30, 2011.* Plaintiff may continue to litigate any ADA claims that arose from events occurring *after* March 30, 2011, and may continue to pursue her FMLA claims. Accordingly, the stay on discovery pending a ruling on defendant's motion to dismiss is LIFTED.[69] The parties are ORDERED to conduct a discovery planning conference pursuant to Federal Rule of Civil Procedure 26(f), Local Rule 26.1(d), and this court's Uniform Initial Order,[70] and to file a written report of that conference on or before December 14, 2012.

DONE and ORDERED this 26th day of November, 2012.

United States District Judge

---

[69] *See* doc. no. 13 (Order Entered October 19, 2012).

[70] Doc. no. 10 (Order Entered August 30, 2010).